**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**TAYLOR NICOLE GRIM,**

**Plaintiff,**

v.

**CIVIL ACTION NO.: 5:21CV50**
**(BAILEY)**

**FILED**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

FEB 2 4 2022

**Defendant.**

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

## REPORT AND RECOMMENDATION

### I.      Introduction

This case arises out of the denial of Plaintiff, Taylor Nicole Grim's ("Plaintiff") application

for Supplemental Security Income ("SSI"), filed on December 7, 2018.    After Plaintiff's

application proceeded through the administrative process, United States Administrative Law

Judge, Joanna Papazekos ("ALJ") concluded that Plaintiff was not disabled within the meaning of

the Social Security Act.   Plaintiff's request for review by Appeals Council was denied, making the

ALJ's decision the final decision of the Defendant.   Plaintiff seeks judicial review of the ALJ's

decision.

The undersigned has considered the parties' briefs and the record on appeal.   The facts and

legal arguments have been adequately presented.   Accordingly, the decisional process would not

be significantly aided by oral argument.   The undersigned would conclude that substantial

evidence exists to support the ALJ's decision.   Therefore, the undersigned would recommend that

Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary

Judgment be **GRANTED**.

## II.      Factual/Procedural History

Plaintiff filed her application for disability benefits on or about December 7, 2018, which alleged disability beginning on or about January 1, 2011.[1]  R. 12; 254.  Plaintiff's claims were denied initially and upon reconsideration. R. 82; 95.  Plaintiff requested a hearing before an ALJ, which hearing occurred on August 11, 2020. R. 12; 31.  On November 5, 2020, the ALJ conducted a supplemental hearing.  R. 54.  Because of the COVID-19 pandemic, both hearings were conducted via telephone. R. 12; 31; 54.  On November 30, 2020, the ALJ issued a decision which found that Plaintiff was not disabled within the meaning of the Social Security Act. R. 12-23.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. R. 1-6.  This appeal followed.

Plaintiff filed her Complaint on April 6, 2021. ECF No. 1.  Defendant filed an Answer on August 3, 2021.  ECF No. 6.  On the same date, Defendant filed a certified copy of the Social Security Administrative Record. ECF No. 7.  Plaintiff filed her Motion for Summary Judgment and Memorandum in support on September 3, 2021.  ECF No. 9.  Defendant filed a Motion for Summary Judgment and Memorandum in Support on November 3, 2021. ECF No. 12.[2]  Plaintiff filed a reply to Defendant's Motion for Summary Judgment on November 17, 2021.  ECF No. 13.

## III.     ALJ Decision

### A. The Five-Step Evaluation Process

In determining whether Plaintiff is disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity.  § 404.1520(b).  If the

---

[1] Although Plaintiff alleged disability beginning on January 1, 2011, Plaintiff cannot receive SSI benefits prior to the date of the application. *See* 20 C.F.R. § 416.335.
[2] An extension of time was given to Defendant to file her Motion. *See* ECF No. 11.

2

claimant is not engaged in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  § 404.1520(c).  If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  § 404.1520(d).  If the impairment meets or equals a listed impairment, the claimant is disabled.  *Id.*  However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. § 404.1520(e).  After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of past relevant work.  § 404.1520(f).  If the claimant does not have the RFC to do past relevant work, then they have established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences.  § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

**B.  ALJ Findings**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2018, which is her application date.  R. 14.  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: OCD; borderline intellectual functioning; ADHD; anxiety disorder with panic, depression, tachycardia; and POTS.  R. 14.  The

ALJ further found no evidence of a medically determinable impairment of a back or neck condition. R. 15. The ALJ also found that Plaintiff's alleged abdominal spasms and diarrhea are non-severe impairments. R. 15. Finally, the ALJ determined that Plaintiff's alleged fibromyalgia is not a medically determinable impairment. R. 15.

At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 44, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). R. 15-17.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following additional limitations: (1) work should involve no quick changes in position; for example, no need to stand up suddenly; (2) work should be performed in a stable work environment where the work place and work process remains generally the same from day to day; (3) decision making should be limited to no more than occasionally and should use only concrete variables in or from standardized situations; (4) work should involve no more than occasional interactions with the supervisors and no work with the public; (5) can be in visual proximity to coworkers but work should involve things and not people generally, so that the interaction with coworkers would be cursory in nature; (6) work should be self-paced, rather than paced by a machine; (7) there should be no tandem work, where fellow employees rely upon the completion of a specific task by the hypothetical individual to complete the production process; (8) work that does not require the attainment of precise tolerances, standards or limits (i.e. no requirement for accurate measurements); (9) work where instructions are provided orally, or with short demonstration with an opportunity for training for up to but not more than 30 days; (10) no exposure to hazards, such

4

as inherently dangerous moving mechanical parts, heights that are unprotected, or open flames; and (11) no more than occasional postural maneuvers.  R. 17-22.

## IV.   Motions for Summary Judgment

### A.   Arguments of the Parties

#### 1.   Plaintiff's Arguments

Plaintiff argues that the ALJ erred when she failed to consider Plaintiff's chronic pelvic pain, which Plaintiff argues constitutes a severe impairment, at Step Two of her analysis.  Plaintiff further argues that the ALJ erred in failing to consider whether Plaintiff meets 12.05 of the Listings. As a result of these errors, Plaintiff argues that the ALJ's decision is not supported by substantial evidence, and this matter should be remanded to the ALJ for further proceedings.

#### 2.   Defendant's Arguments

Defendant argues that the ALJ did not consider Plaintiff's alleged chronic pelvic pain at Step Two of the analysis because Plaintiff did not allege that chronic pelvic pain is a severe impairment.  Defendant further argues that, even if Plaintiff did make such an allegation, there is no evidence to support a finding that this impairment significantly limits Plaintiff's ability to perform basic work activities as required by SSR 85-28.

Defendant also argues that, although the ALJ did not specifically address Listing 12.05, the ALJ's opinion nevertheless included an analysis of the factors to be considered in assessing Listing 12.05, and that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not satisfy the requirements of this Listing.  Defendant maintains that remand is not necessary, and that the ALJ's decision should be affirmed.

### B.     The Standards

#### 1.     Summary Judgment

"Summary Judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

#### 2.     Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (internal citations and quotations omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), overruled by implication on other grounds by *The Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

### C.     Discussion

#### 1.     Chronic Pelvic Pain

The ALJ did not err in not addressing Defendant's complaints of pelvic pain at Step Two of the ALJ's analysis and substantial evidence supports the ALJ's determination not to address Plaintiff's complaints of pelvic pain. This assignment of error is therefore without merit.

"It is well-settled that an ALJ is under no obligation to consider impairments that a claimant does not allege are disabling." *Wilson v. Colvin*, 218 F.Supp.3d 439, 451 (E.D. Pa. Nov. 1, 2016)

6

(citing *Podsiad v. Astrue*, 2010 WL 662211, at \*21 (D. Del. Feb. 22, 2010) and *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).  Here, a review of the administrative record reveals no evidence that Plaintiff alleged that her pelvic pain is a disabling impairment.  There is no such allegation in Plaintiff's hearing testimony,[3] it is not mentioned in the Representative Brief submitted by Plaintiff's representative following the second hearing with the ALJ, and it is not mentioned in the Representative Brief submitted to appeal the ALJ's finding.  *See* R. 33-53; 54-71; 339-342; 343-347.  Moreover, pelvic pain is not asserted as an alleged severe impairment or disabling condition in the Adult Function Report submitted by Plaintiff.  R. 265-272.

Plaintiff argues that she asserted "reproductive issues" as a condition that limits her ability to work in her Disability Report, R. 254, and in her On the Record Hearing Request Memorandum, R. 169.  This argument is not persuasive.  Even if Plaintiff is correct that she did assert "reproductive issues" as a condition that limits her ability to work, "reproductive issues" does not necessarily equate to "chronic pelvic pain," and without more, the ALJ could not have been expected to equate the two – especially because there is no evidence in the record to support Plaintiff's assertion that her "reproductive issues" and/or her "chronic pelvic pain" constitute the same or similar impairment, or that either one or both is severe.

Plaintiff also argues that the sheer number of hospital visits and records documenting Plaintiff's complaints of pelvic pain should have alerted the ALJ that she needed to consider Plaintiff's pelvic pain at Step Two of the ALJ's analysis.  The undersigned would disagree. While it is true that an ALJ has a duty to consider impairments about which the ALJ receives evidence,[4] and "[a]lthough the ALJ has a duty to develop the record fully and fairly, [s]he is not required to

---

[3] This alleged impairment is not mentioned by either Plaintiff or her representative during her testimony.
[4] *Nicholson v. Commissioner of Social Sec. Admin.*, 600 F.Supp.2d 740, 756 (2009).

act as Claimant's counsel." *Weise*, 2009 WL 3248086, at *13 (S.D. W.Va. Sept. 30, 2009) (citing *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)).

Moreover, and perhaps more importantly, the number of hospital visits in this case, alone, is not enough to support a conclusion that Plaintiff's complaints of pelvic pain constitute a severe impairment.  To be considered a severe impairment, the impairment must "significantly limit[] [one's] physical or mental ability to do basic work activities."  10 C.F.R. §§ 404.1520(c); 416.920(c) (2007).  There is nothing within the record that suggests that Plaintiff's pelvic pain significantly limits (or limits at all) Plaintiff's physical or mental ability to do basic work activities.[5]  Thus, there is nothing which would have suggested to the ALJ that she should have considered at Step Two of her analysis whether Plaintiff's complaints of pelvic pain constituted a severe impairment.

Plaintiff also argues that the ALJ should have considered Plaintiff's complaints of pelvic pain as part of her analysis of the comprehensive impact of all of Plaintiff's severe and non-severe impairments on Plaintiff's ability to do basic work activities (with pelvic pain constituting a non-severe impairment).  The undersigned would disagree.  Again, there is nothing in the record that would indicate that Plaintiff's pelvic pain interfered with her ability to perform basic work activities, or that it interferes with her ability to perform activities, generally.  As such, there is nothing in the record which would indicate that Plaintiff's pelvic pain alone or in combination with any other impairment could have an impact upon Plaintiff's ability to perform basic work activities.  The undersigned would therefore conclude that this assignment of error is without merit

---

[5] A review of the documents cited at p. 9 of Plaintiff's brief [ECF No. 9-1] reveals that, while Plaintiff complained of pelvic pain, she appeared to have attributed the same to events within her menstrual cycle and indicated that the bouts of pain were predictable.  The documents cited consist primarily of documents from Emergency Room visits. Typically, during these visits, Plaintiff told the healthcare provider that she was out of the pain medication she was prescribed to treat her pain (Toradol).  A supply of Toradol was typically dispensed to her before discharge.

and that substantial evidence supports the ALJ's determination not to include Plaintiff's complaints of pelvic pain into the ALJ's impairment determination.

### 2.   Listing 12.05B

The undersigned would similarly conclude that the ALJ did not err with respect to Listing 12.05B. The Court initially notes that, while the ALJ did not specifically address Listing 12.05B within her decision, the ALJ nevertheless analyzed the various factors attendant to Listing 12.05B. Plaintiff did not meet the requirements of these factors. R. 15-17. Substantial evidence supports the ALJ's conclusions.

To meet the requirements of Listing 12.05B, a claimant must demonstrate the following:

1.   Significantly subaverage general intellectual functioning evidenced by a or b:
   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2.   Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   a. Understand, remember, or apply information (see 12.00E1); or
   b. Interact with others (see 12.0E2); or
   c. Concentrate, persist, or maintain pace (see 12.00E3); or
   d. Adapt or manage oneself (see 12.00E4); and
3.   The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05B. The ALJ recognized Plaintiff's full-scale IQ score of 70. R. 16. It does not appear that there is a dispute about whether Plaintiff's difficulties in this sphere arose prior to her 22nd birthday. *See* ECF No. 12-1 at p. 10-12; R. 15-17. Thus, it appears that the only factor at issue is whether Plaintiff satisfies Listing 12.05B(2). The ALJ found that

Plaintiff has only moderate limitation(s) in the areas delineated by 12.05B(2). Substantial evidence supports this conclusion.

The ALJ concluded that Plaintiff demonstrates only a moderate limitation with respect to the area of mental functioning listed in 12.05B(2)(a) - understanding, remembering or applying information. In so concluding, the ALJ appears to have relied upon Exhibits 9F and 14F of the Administrative Record, which include Progress Notes dated 04/18/2019 to 2/4/2020 from Winchester Community Medical Center. These records support the ALJ's conclusions. In particular, these records demonstrate that Plaintiff's mental status exams indicated normal speech, linear thought processes, normal judgment and insight, normal attention and concentration, and a high school level fund of knowledge. R. 925-931; 1981-1994. A review of Exhibit 21F, which includes Office Treatment Records dated 6/1/2020 to 8/3/2020 from Eastridge Health System, reveals that Plaintiff exhibited normal memory, appropriate thought content, and goal directed thought processes. R. 2152-2173.

The ALJ concluded that Plaintiff has a moderate limitation with respect to the area of mental functioning listed in 12.05B(2)(b) - interacting with others. In so concluding, the ALJ appears to have relied upon the following evidence: Exhibit 4E, which is an Adult Function Report dated 1/29/2019 (R. 265-272). The ALJ also appears to have relied upon Progress Notes dated 4/18/2019-7/31/2019 from Winchester Community Mental Health Center (R. 925-931); and Office Treatment Records from 6/1/2020 to 8/3/2020 from Eastridge Health System (R. 2152-2173). A review of this evidence confirms that substantial evidence exists to support the ALJ's conclusion. Indeed, the Administrative Record confirms that, although Plaintiff experiences anxiety and panic attacks, and does not like to go out alone, she nevertheless shops for groceries twice a week for a

"couple [of] hours." R. 268. The records further show that Plaintiff had an appropriate appearance, normal speech, a linear thought process, and normal judgment and insight. R. 925-931.

Finally, with respect to the area of functioning set forth in 12.05B(2)(d) - adapting or managing oneself - the ALJ relied upon generally the same evidence as the evidence set forth above. A review of the same confirms the ALJ's categorization of said evidence. Substantial evidence therefore supports the ALJ's conclusion that Plaintiff has only a moderate limitation in terms of adapting or managing oneself. R. 265-272.

Plaintiff argues that evidence demonstrates Plaintiff has a significant deficit in interacting with others and adapting or managing oneself. Plaintiff specifically points to R. 265-280 which Plaintiff argues demonstrates that Plaintiff does not go out of her house into the public alone. Contrary to this assertion, these records show that Plaintiff prefers not to go out alone, but that she can do so. The undersigned would further note that evidence in the record indicates Plaintiff goes out shopping approximately twice a week for about 2 hours at a time to do grocery shopping. Although Plaintiff appears to perform this activity with her mother, such a fact does not support a finding of a significant limitation in interacting with others or adapting or managing oneself. R. 268.

## V.    Recommendation

Accordingly, and for all of the foregoing reasons, the undersigned would **RECOMMEND** that Plaintiff's Motion [9] for Summary Judgment be **DENIED**. The undersigned would further **RECOMMEND** that Defendant's Motion [12] for Summary Judgment be **GRANTED**.


**Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file**

with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Judge of Record. **Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.** *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

Respectfully submitted this 24th day of February

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE